## Joel Ryshpan, et al. v. Edward J. Cashman, County Clerk of Chittenden County, et al.

[326 A.2d 169]

No. 197-74

Present: **Barney, C.J., Smith, Keyser and Daley, JJ., and Shangraw, C.J. (Ret.)**

Opinion Filed October 9, 1974

*Kimberly B. Cheney*, Attorney General, and *James L. Morse*, Assistant Attorney General, for the State.

*Thomas L. Hayes, Esq.*, Burlington, for Plaintiffs.

*McNamara, Fitzpatrick, Sylvester, Farrell & Maley*, Burlington, for Defendants.

**Per Curiam.** The plaintiff seeks to be placed on the ballot for the ensuing general election in 1974. It appears that the Republican Party of Chittenden County filled only five of six available candidate positions for State Senator by means of primary election. Under the provisions of 17 V.S.A. § 572(g), the party was therefore entitled to fill the sixth candidate vacancy through the device of nomination certificate. This was done, and the certificate tendered to the defendant County Clerk on September 27, 1974. The defendant would not accept it for filing, and a corrected certificate complying with the formal requirements as to oath and certification was tendered on September 30. This, too, was refused as to filing, and this litigation followed.

The lower court affirmed the decision of the County Clerk, finding the following additional facts. It appears that the Sec-

retary of State had published, in accordance with long-standing. practice, a primary and general election calendar giving dates and deadlines for performing certain acts and making certain filings under the various and multitudinous election statutes. It is acknowledged that the calendar published for 1974 was in error on page ten with respect to the date limiting filing of candidates by nomination certificate in cases of failure to nominate at a primary.

The date given in the calendar for the filing deadline was September 30, 1974. Computation under the provisions of 17 V.S.A. § 577 reveals the correct date to be September 18, 1974. The plaintiff candidate was nominated by the Chittenden Republican County Committee on September 10, 1974. The executive director of the Republican State Committee personally conferred with the Secretary of State about filing dates and was then told that September 30, 1974, was the deadline for the nomination certificate and so informed, in writing, the town and county committees. He did not check with the defendant County Clerk, who was, at all times, aware of the error. The findings state that the plaintiff candidate relied on the erroneous information given out by the office of the Secretary of State in filing his nomination papers. None of the findings are questioned.

The lower court concluded that the County Clerk was bound by the statutory requirements of 17 V.S.A. § 577, which set the deadline at September 18, 1974, and that, as to him, the requirement was mandatory. This is unquestionably correct. The County Clerk is not authorized to alter or amend mandatory statutes at will, but is bound to follow their requirements, subject only to whatever authority he may be given within their provisions to make or whatever extent directing he may, by law, be bound to obey. To say otherwise would be to invite individual clerks to render election law confused or chaotic, or to ignore it altogether, according to their personal evaluation of circumstances.

The question remaining is whether there is, in the judicial system, jurisdiction and authority to fashion any relief. Many situations are resolved by private action involving money damages, either because payment represents a substantially equivalent kind of recovery, or because other relief represents such an arbitrary solution or involves such an extensive

dislocation of other, competing rights as to amount to a new wrong. This case does not lend itself to measurable money damages, and, at this particular stage in the electoral process, recovery of the right lost involves a minimum of dislocation and prejudice. Equitable principles, therefore, indicate the desirability of granting the relief specifically prayed for: inclusion on the appropriate ballot.

The other essential ingredient is also present. There is authority in the court system, in response to a petition for extraordinary relief, to make an appropriate order. The plaintiff has been misled to his detriment by misrepresentations for which the State of Vermont must assume the responsibility. It is a situation where implementation of exact statutory requirements will result in a wrong by the government itself. That wrong would result in injury to the electoral interest of voters by unwarranted restriction on candidate choice for Chittenden County voters. In view of the circumstances, the lesser harm results from requiring that the statutory pattern yield, rather than allow governmental action to have the unintended effect of denying the plaintiff's candidacy.

The Legislature has directly expressed its broad intent with respect to construction of the State law governing the processes of nomination in 17 V.S.A. § 302:

> The provisions of this chapter shall be liberally construed so that the real will of the voters shall not be defeated, and so that the voters shall not be deprived of their right to nominate or participate in the nomination of candidates for office because of informality or failure to comply with the provisions of this chapter as to notice or conduct of the primary, or of certifying the results thereof.

That this extends to the procedures here involved has already been indicated in *Abbott* v. *Thomas*, 130 Vt. 71, 73, 286 A.2d 272 (1971).

Consistency with that overriding policy directive requires that this Court resolve the dispute by resort to its authority to give extraordinary relief. Justifiable reliance on erroneous actions on behalf of the State has put one or more of its citizens in inescapable conflict with the literal terms of one of the time requirements instituted by that same sovereignty. Since to support the results of that mistake is to violate the ex-

pressed policy of the Legislature and do harm to the rights of a citizen candidate as well as the rights of the voting population generally, the statutory time schedule must be, as a matter of equity, and in the presence of minimal prejudice, required to yield. Similar, but more extreme, consequences have followed the necessary implementation of constitutional policies, and are authority for our action here. See *Hutchinson* v. *Cooley*, 125 Vt. 303, 308, 214 A.2d 828 (1965). Like results have been reached on parallel problems in many jurisdictions. See *Clegg* v. *Bennion*, 122 Utah 188, 247 P.2d 614 (1952); *Donohoe* v. *Shearer*, 53 Wash.2d 27, 330 P.2d 316 (1958).

In order that full justice may be done, the time for filing written objections to the certificates of nomination under 17 V.S.A. § 581, will be extended. Any certificates of nominations filed on or before September 30, 1974, but after September 18, 1974, in reliance on the calendar dates published by the Secretary of State shall not, for that reason, be invalid.

*The order of the lower court is reversed, and it is the order of this Court that the time for filing objections under 17 V.S.A. § 581 to certificates of nominations filed after September 18 and not later than September 30, 1974, shall be extended to October 15, 1974. Names of candidates designated in certificates of nomination, presented to the required officer within the time limitations set out in the "Primary and General Election Calendar for 1974", prepared and issued by Richard C. Thomas, Secretary of State, shall be placed on the appropriate ballots, if the certificates are otherwise valid. Let the mandate issue forthwith.*